When you're ready. May it please the court. Thena Evangelis on behalf of ABM. I'd like to reserve five minutes for rebuttal. This court should reverse the district court's order remanding this case to state court and hold that it should have considered plaintiff's amended complaint. And if it did, it did consider the amended complaint. We now know because the mandate has issued in the Paca case that he would have come to the same conclusion I'm a little mystified by this case. I don't understand it. Yes. Let me explain, Your Honor. So after ABM removed the case to federal court, plaintiffs voluntarily filed an amended complaint. I understand that. And we now know that the Paca claim doesn't count. Your Honor, there are, in addition to the Paca claims, there are expense reimbursement claims that ABM believes also satisfy CAFA and the district court's order in its entirety is on review now before this Court. This Court has de novo review of the order. There's nothing in your briefs that discusses the details of the calculation other than the Paca claim, right? Your Honor, we do discuss this argument. We don't discuss it at length. And I In a sentence? Yes. It's on In this report, there are all kinds of charts and experts and everything. We've got none of that in our briefs. Is that right? Yes. And, Your Honor, in light of the fact that Yoku P.C.O. is now the mandate has issued, as Your Honor mentioned, and this case was briefed simultaneously because of the expedited appeal, we would ask an opportunity Four over. When you then re-removed it, you now have a calculation that without the Palga is clearly under $5 million. You had a different calculation this time, right? Your Honor, we maintain that we disagree with the district court. The second removal petition has a number of somewhere around $3 million for the class claims. That's if we accept the district court's calculation. But this court has now granted review of the district court's order remanding the case based on the initial complaint, refusing to consider the amended complaint. And we believe that, as we reimbursement claims and the Palga claims, we argued... But the Palga claims are now backed out. Yes. So the only thing this case is about now, you're telling us, is the original calculations, without the Palga claims. We believe that the original calculations do exceed $5 million. Is that the only issue that's even possibly before us now, that you don't lose on? I'm sorry. Is that the only claim that you're asking us to review now because the Palga issue has been determined by the earlier case? Well, Yocupicio is binding and we disagree with it and we intend to seek further review if the court relies on it. We understand that it's binding now. Putting that aside, we also, we believe that this court should address the question whether an amended complaint should be considered by the district court because... Why would we do that if the Palga claim is already determinative? It doesn't make a difference. Your Honor, the court accepted this appeal in order to clarify the law on that question as the Fourth Circuit held in Moffitt. How do you know that? Well, Your Honor, when we petitioned pursuant to CAFA because the law is unclear on this question and litigants and district courts need clarity on it. But putting that question aside, we do believe that there is jurisdiction based on the expense reimbursement claims and I understand the Palga claims. We disagree with Yocupicio and, Your Honor, we would ask for an opportunity to submit supplemental briefing to clarify that question if Your Honor thinks that would be helpful. I can explain very briefly why the expense reimbursement claims do exceed $5 million and the district court's decision to the contrary conflicts with DART and, with the Supreme Court's decision in DART and this court's decision in Ibarra by not crediting... You know, I'm a little slow. Help me out here. Okay, so there's an initial petition complaint filed in federal court. There's a removal. And then there's... What happens? There's an initial complaint filed in state court. Then there's a removal. And then after that, ABM moves to dismiss. And after that, the plaintiff's amend. Moves to remand, right? Not dismiss. Excuse me? Moves to remand? No, ABM moves to dismiss. Then the plaintiff's move to plaintiff's file an amended complaint and then move to remand. Right. So that amended complaint added the Palga claims. Yeah. And so plaintiffs withheld that claim, then added it once they were in federal court. Under this court's decision in Retail Property Trust, for example, also in Benko, amended complaints matter in federal court. And so our argument is that the district court should have considered that amended complaint. Yeah, but instead of considering that amended complaint, the district judge does what? The district court holds that it cannot consider an amended complaint. It's limited to the initial complaint at the time... And then, having said that, what does the district court do? Removal. The district court orders that the case be remanded. And then what happens? Then the ABM re-removes the case based on the initial complaint in an attempt to... So there's a separate case now going forward with the amended complaint? Well, it's the same case under the removal statutes, when a case goes back and forth between State and federal court. But we are once again in federal court. But there's a separate appeal now? There is no other appeal. This is the only appeal, Your Honor. There's no separate appeal because the district judge hasn't decided it yet. That's correct, Your Honor. So there is... I'm not sure why this is, this case is a live case, given that you now have the amended complaint in, in the court. It's now the district court's looking at it to decide whether to remand. The district court has in front of it, which under any definition of duty or whatever, the district court's going to look at it. So you got, you're getting right now what you claim you should have got. Your Honor, we claim, the relief that we seek is a reversal of the district court's remand order. This is, the controversy is over whether there's... You seek the reversal, based upon the amended complaint the district court didn't look at. So we don't really have a district court decision based on the complaint that you say is the determinative one. We now have that complaint that you say is the determinative one in front of the district court, and the district court hasn't yet made up its mind. Am I, am I mistaking something? That's correct, Your Honor, but we believe... So why should we decide this case in its current posture? Why don't we wait for the district judge to have a look at the complaint that he's got in front of him? And he's clearly going to consider, just as you say he should have previously, but now he's going to do it. Your Honor, this is a pure legal question. As the court recognized in Bauman, in the court's decision in Bauman, it reached a question under CAFA of jurisdiction. It did so in the first instance. It's... But what question are you asking? Let's go back. Is where you're about to go that you want us to decide whether there was $5 million on the costs? We, yes, Your Honor, we believe... Where in your brief did you argue that? Just a moment, Your Honor. We argued, we believe that this Court should address the question whether, whether there is jurisdiction over this case in Federal court, and I'm... I want to know on what basis we're going to do that, given that it's a rather complicated issue, as I understand it. Yes. Well, Your Honor, it's a pure legal question, and this Court can't address it in the first instance. Well, but it's based, it's not exactly a pure legal question, because it involved a whole bunch of expert testimony about how you go about doing this number, and the district judge looked at the experts and decided which expert he thought was more credible in this economic calculation. And you have told us nothing about any of that in the briefs. Is that right? On, we do not go into the calculations in detail, but we do cite the calculations on page 7 and 8 of our, of our brief. And when we, when we briefed this case, Your Honor, Yoku P.C.O., the panel decision was not yet binding, because the mandate had not issued. But you could have briefed this, and you could have raised the issue, and you didn't. Right? Your Honor, we would, again, I'd ask for an opportunity to explain it, and I can do so very quickly here. It's very clear in the record and in our opposition to the Court's order. And this Court, I can explain very briefly, plaintiffs disagreed with our estimate of $78 per month in cell phone expenses per household, based on Department of Labor statistics. They argued that that number should be alternatively either $30 per month or $20 per month. That's the lowest estimate. Under either one of those, if this Court assumes $30 per month, if it assumes a 35 percent reimbursement rate for an employee's cell phone expenses, then if you add in attorney's fees, that's over $5 million. That's a reasonable assumption, Your Honor. And under Dart and Ibarra, the district court was required to credit ABM's reasonable inferences and assumptions. And also, if we take the $20 per month estimate, the same result applies. And so I'm not understanding why, when you have every opportunity to brief this and to raise the issue as an issue, you neither raised it as an issue nor briefed it. Right? Is that much right? Your Honor, we did — You mentioned it in the Statement of Facts, but that was it. And we mentioned it on, yes, on page 7 and 8 of the brief. Yeah, which is the Statement of Facts. It's not a — it's not an argument. And, Your Honor, again, because of the simultaneous briefing in the case that occurred and the fact that we haven't had an opportunity to respond to the mootness argument and because Yocupicio became binding while — after our brief was filed, this is a very unique situation, as Your Honors recognize. But ordinarily, one assumes that — I mean, it's a fairly risky posture when you have an already decided case, which you did, to take the position that it wasn't binding on us. I mean, it's — you know, for five minutes it wasn't binding on us, but the notion that you were so sure it was going to go unbanked that you could just throw, you know, throw this other issue to the winds and then now we should let you bring it back is — Your Honor, it's a — it's a jurisdictional question, and the Court can resolve — It's a jurisdictional question in the other direction. This is an interesting issue. In other words, if we are not going to assert — I understand that if we were going to assert jurisdiction, we have to consider a jurisdictional issue. If the result was a remand and you didn't raise the question, do we have to go and figure out for ourselves whether we do have jurisdiction as opposed to whether we don't have jurisdiction? Your Honor, we believe that the Court has jurisdiction and that the record is — No, no, I'm asking you a procedural question. I understand. Yes. In other words, can you not waive a jurisdictional issue that cuts against you? If we're going to not — I mean, not end up — if it ended up that we were going to assert jurisdiction over something we didn't have jurisdiction over, that would be a different problem. But this is running the other way. And, Your Honor, that's a very interesting question, and I don't have a case that's on point in that situation. I do know that the Court's jurisdiction, jurisdictional questions generally are reviewed and the court can investigate for itself its jurisdiction, confirm its jurisdiction. And I would like to reserve the remainder of my time for rebuttal unless the Court would like me to answer questions right now. Sure. Thank you. May it please the Court. Good morning. My name is Hunter Pyle for the Plaintiffs and Appellees. I think that there are two big questions here or two big issues. The first is the mootness issue, which we — which the Court has been discussing, I believe, for the past few minutes. And for the exact reasons that you pointed out, this case is moot. There is no relief that this Court can grant that this — that the defendant, AVM, is not going to receive in three weeks. On October — Well, let me ask you something. Yes. As to this $5 million figure on the class claims, will they get to raise that a second time? They have not raised it. Their opposition brief has been filed. It's not part of their opposition brief. And so it's, frankly, bizarre to be sitting in this Court hearing a factual argument about the value of this claim. If they're going to raise it, the only place that they should be permitted to raise that is in the district court. But you would agree that even if they were — or are you — do you think that even if they waived it here now, on the second remand, they could — remand motion, they could raise it again? I understand they didn't, but could they? I don't see why not. I don't see why not. And that is why the process actually worked very well in this case. And the bright-line rule that this Court has recognized in other situations worked very well here. ABM removed a case over which there was no federal jurisdiction. We demonstrated that. Our district court judge then remanded to state court. And then — and this is critical — ABM filed a notice of removal based on the first amended complaint. But in order to decide that, do we have to decide whether you look at the original complaint or the amended complaint, or can we just rely on the fact that even if you looked at the — on the amended complaint, it's still a pocket? A pocket doesn't count now. We know that. Well, I think — Which, by the way, you didn't argue in your brief. That pocket doesn't — does not count? Yeah. Frankly, we were surprised that that issue was raised by ABM in its appellate brief. And we did have briefs that were filed simultaneously here. And so we didn't — we did not consider that ABM was going to try to use this appeal, which we — which began as an appeal on this limited procedural issue, that they were going to try to use it to argue against Yocupicio. That never dawned on us that they would seek to challenge a three-judge decision. When you could have won or can win, perhaps, if the case isn't moved on the — because we now know — and we knew really at the time that the packet claims don't count, why are we deciding some procedural issue that doesn't make any difference when, with or without that procedural issue, either the first complaint — the original complaint or the first complaint still isn't $5 million, unless we get into the counting part? Well, again, that's why we begin our brief by arguing mootness. And now that Yocupicio — that the petition for en banc review has been denied unanimously, this case is even more moot. But it was even moot before that because, again, in three weeks' time, our district court judge is going to rule on our motion to remand the first amended complaint, which is, in our opinion — But, I mean, there is some — isn't there something somewhat inefficient about that system? I mean, I know there's some support for it. There's also some support maybe in the other — I mean, you're arguing for a one-way ratchet, essentially. That if you — I mean, if you try to amend the complaint to defeat federal jurisdiction, you would look at the original complaint. Correct. You're arguing that you'll do the same even though the result is that we have to do it twice now. Exactly. And I can explain exactly why. Okay. And it's a very practical reason. When this case was remanded to state court — keep in mind that ABM removed on the allegations in the complaint. So for the first removal, they filed a statement saying why they thought that the complaint belonged in federal court. When the case was remanded to state court and then removed again, ABM filed removal papers based on the first amended complaint. And that document is in the record. It's a 12-page document. It details exactly why ABM believed that the first amended complaint belonged in state — in federal court. That document provided critical information for us to review to determine whether or not to file a second motion to remand. And if ABM's exception to the court's longstanding Bright Line rule is adopted, that would not have happened. And so we would have had to basically take a stab in the dark to try to figure out what do we think ABM thinks about why this case now belongs in federal court. I'm sorry. This is a remedy by the district court just having a second round of briefings. So I don't understand that argument. Pardon me? That would be a remedy. Once you filed — there didn't seem to be any problem here. It was, in fact, briefed, right? It was. The question of which one you should rely on. So you could just as easily have briefed the question of whether with the pocket claim in it, it should stay or go. Well, but that's not the only — as the Court has heard, that's not the only issue here. ABM is asserting, apparently, other factual reasons that — That was in the first. I mean, that was briefed and argued and determined in this proceeding, in the remand proceeding. Some of it — I don't really understand what you're saying. The only question here is whether you amended the complaint to add the pocket claims after the motion to remand was filed or before? Before. Before. Yeah. All right. You then write a response to — write a motion to remand. Correct. You say, well, you didn't realize there — you'd already amended it. You didn't realize that they were going to argue about this changing things. But, no, they could have filed — filed a motion to file — somehow it got to the district court, so there didn't seem to be any problem with people arguing about it. You argued about it. So I don't understand that explanation. Well, so there are two paths here. One is the path that happened, which worked very well, which was the Court granted the motion to remand. We went down. ABM filed a notice of removal of the first amended complaint. We then had a detailed document that told us exactly why they thought that this case should be in Federal court. The same detailed document without having to go back to the State court, bother a State court with it, file another motion to remand, adopt another case in the district court. I mean, you could have done — had just as — illuminating a dialogue the first time around. You did, in fact. There is no dispute that the district court, in theory, could have ordered that. But that's not what she ordered. She ordered something else, which worked very well. And ABM is now challenging that and asking for a mandatory rule that the district court must consider the amended pleadings, which, A, goes against the longstanding Brightline rule, which has served this Court and other courts very well, and, B, would actually lead to more forum manipulation. Because if the rule is that the district court must consider the amended pleadings that are filed after a case is removed, then plaintiffs will be incentivized to amend their pleadings in such a way as to defeat jurisdiction. And that will lead to — If you have a one-way rule. And if you have a one-way rule, then we would submit that that was, is, A, unfair to plaintiffs, but, B, confusing. And then district courts will have to look only at certain allegations in an amended pleading, but not at others. And that just seems like a morass. Well, the recent Benko case is a little bit of a — I mean, it's some shink in your honor, and so I understand it's not directly the same. The Benko case? What? Did you say? Did you say the Benko case? Yes. But it did look at the amended complaint for the purposes, as you said, of clarifying what the original complaint said. Right. So — and there was just a fervent dissent that said that — and, in fact, they're still pending it on bank, I think. Right. Well, Benko involves this strange conundrum that district courts face when dealing with the local controversy exception, where plaintiffs would have no reason to plead around the local controversy exception when they file in state court, but yet when the pleadings are removed to federal court, the district court is bound by the pleadings in determining whether there's a local controversy exception. And so Benko held, I think, correctly that it would be extremely unfair to not allow the plaintiffs to explain this issue that they would have had no reason to explain prior to removal. So Benko is limited, I think, to a very particular set of facts and a very particular issue that's created by CAFA and the local controversy exception. But that really does not apply here. Here, it is a matter of hot dispute, as the Court can tell from our arguments this morning, whether there is jurisdiction or not. And when there is a dispute, we submit that it makes sense to follow the procedure, even if it's a little redundant, a little bit. It is the best way to get to where we ultimately want to go, which is the district court considering the merits of the jurisdiction question with respect to the amended pleadings. So... What is your position about whether we could and or should reach the $5 million cost issue? I don't think that this Court could or should. Starting with the should, it hasn't been briefed properly to you, and I think that ABM is going to have some major problems making that argument when it goes against positions that they've taken previously in this case. But and also, I think... I don't understand that part. Why does it go against positions taken previously? Because their removal papers on the... Second removal papers. Indicate that the damages do not exceed $5 million unless you add PAGA to this. And I don't think that ABM should be rewarded for proceeding in this manner, which has caused an incredible amount of waste. There's no reason for any of these issues to be before this Court at this time. Lastly, I would just point out that the District Court has not ruled on whether there's $5 million in controversy or not. And the best... I thought it did. Well, they haven't ruled on... Let me be clear. I'm sorry if I wasn't clear. They have not ruled... The District Court has not ruled on the first amended complaint. That was my point. The best course is for the District Court to have an opportunity to rule on that and then if this Court... And then if for some reason the District Court believes that there... Why isn't the most efficient thing for us to do right now is say, given the case whose name I can't say, the recently mandated case, PAGA doesn't count. They haven't briefed the $5 million, the other $5 million. We affirm for that reason, different reason. Well... That way the District Court doesn't have to scratch... Those proceeds can be also speeded up. That's certainly one way that this Court could do things. Do you object? To this Court deciding that there was not $5 million? Is that less affirming? On the ground that the PAGA case is now binding and therefore there's no argument about whether the PAGA issue was in or out doesn't make a difference. Which is the only issue as to the First Amendment complaint versus the original complaint, right? Well, that's our position. I'm not sure that that's ABM's position. My concern is that I don't think that this issue is ripe, frankly. I don't think that it's really been fleshed out enough and it's... Why? What's your motive? In this case in general, I can't understand anybody's motives about anything. And I can't understand your motive for saying that. Why don't you want the whole issue over with? Because in order for this case to address the First Amendment complaint, the Court would have to get there somehow. And it would have to decide, I think, that the district court was wrong. Why can't we say it's all spinach? Because whether we do or don't look at it, we come to that in the same place. Well, if the Court were to say that, I would not object to it. But my concern is there are two aspects of this question. There's the calculation part of it, but there's also the procedural part of it. And we do, again, feel strongly that the district court got it right in following the process that's laid out in the U.S. Code. And there's no problem with that. Our concern is that if this — we don't want this case to become a vehicle for courts to disregard that. Can I ask you something else? Was there some timing imperative that led you to amend the complaint with the PACA claim before the remand issue was decided? How did that come about? Yes. PAGA requires a 33-day notice to the LWDA, the Labor and Workforce Development Agency. So if you file a complaint, a case with the underlying wage and hour violations, Labor Code 2802 in this case, you cannot file your PAGA claims until you have exhausted with the LWDA. So it is — You have to do it. But why couldn't you have waited until you found out whether there was a remand or not? Well, in wage and hour cases, the clock is ticking. Every day that goes by, you lose another day's value of the claim. And we feel like it's our obligation, representing these plaintiffs, to get their cases filed as quickly as possible, because otherwise the time is running. And there are always some people on the tail end of that. There are some people who are in a big class. This is one. There are always people at the very end who —  What's that? It's a representative action. The PAGA claim is a representative action. Yeah. But you still have the same problem? Well, yes. Yeah. And the PAGA statute is only one year. And so you lose claims very quickly on the PAGA statute. But our practice representing people is to get their claims filed as quickly as possible. That's helpful. Thank you. Okay. Thank you, Your Honor. I appreciate it. Thank you, Your Honor. Well, as Mr. Pyle just agreed with me, that there is a hot dispute in this case over whether there is Federal jurisdiction. The case is not moot, and the merits are separate from the mootness question. The — whether the court does not have jurisdiction or whether it does have jurisdiction is a question that this Court can decide. And although there is a motion to remand before the district court right now that raises some of these issues, this Court's — this Court has review over the district court's remand order and can decide these questions right now, and they are properly presented. Second — What are these questions? — whether there is Federal jurisdiction over this case both under — under both claims, the PAGA claims and the expense reimbursement claims. And also, just going back to Your Honor's question about inefficiency, this is incredibly inefficient. This — there is so much procedural uncertainty, and both sides have been confronted with this. But if — it is very clear that there is a — a one-way rule already, and it's well established in the Ninth Circuit and Sixth Circuit's agreement — It's well established. — that — that if a plaintiff adds grounds for jurisdiction, it can be considered. If they try to remove Federal jurisdiction, it can't be considered because of the gamesmanship concerns. Okay. Sure. The Schabner case in — in this Court, also Retail Property Trust is a 2014 case by this Court, which cites favorably Moffitt, the Fourth Circuit's decision. If this Court agrees with plaintiffs here that a district court has to blind itself to an amended complaint, it will be creating a direct conflict with the Fourth Circuit in Moffitt, which the panel in Retail Property Trust also relied on. It is a separate question when a — a plaintiff adds claims that confirm jurisdiction versus when it adds claims in an attempt to defeat jurisdiction. So that is a distinction that already exists. At the end of the case. Excuse me? Caterpillar was at the end of the case. In other words, is there any case in this posture in which the question arises at the point of the — of the remand issue? It's Moffitt, exactly. But Moffitt was not our case. It's the Fourth Circuit, which is the most on point. Doesn't that come out the other way? Adaba case? Excuse me, Your Honor? What about the Adaba case? The Abada case is — is different because that was an amendment after a — That's not really exactly right because it was a reconsideration motion, and so the reconsideration motion that was decided, and it was decided after the amendment, right? After. And Retail Property Trust is another case that — that articulates this rule. And — and there are six — again, other — six other circuits that also agree with this rule. And — and the Supreme Court explained the concerns about forum manipulation in the St. Paul case. Those exist when a — when a plaintiff tries to defeat jurisdiction. This court in Benko very recently, just a few months ago, explained that in the case of Benko, the first amended complaint should be considered. There, it was unusual because it actually deprived this court of jurisdiction, but the court took it into account because it was not intended to defeat. There wasn't any evidence of gamesmanship there. But in a situation where — what this leads to, if the court says that the district courts must blind themselves to an amended complaint, is this very inefficient ping-pong between State and Federal court. It's much more efficient to take into account the first amended complaint. If it establishes jurisdiction, the inquiry is done. If it does not establish jurisdiction, then you look at the original complaint and — and inquire whether it was intended to defeat jurisdiction. I suppose — I suppose that after the remand, they could have amended the complaint again to take out the pocket claim. If — well, I mean, the pocket claim is a bad example because their position wasn't — it didn't affect whether there was jurisdiction. But if, for example, they had added an assertively Federal claim when there wasn't one before and it was remanded for some reason, they could then take it out to — at that point to avoid another removal, couldn't they? So then there wouldn't be another removal. They might. And then there might not be another removal. And then we would really have to consider whether that — there would be no opportunity to remove, and that would be pure gamesmanship, where they would have succeeded in defeating Federal court jurisdiction by amending. No. Well, that's one way of looking at it. Another way of looking at it is that they — they just dropped their Federal — the grant for Federal removal, so now they're in state court. Well, what — as the Fourth Circuit explained in Moffitt, it's complete — it's very inefficient to — to blind — for the district court to blind itself to an amended complaint, and then the defendant has to re-remove and sometimes — But wait a second, because there isn't necessarily a re-removal. There may or may not be a re-removal. Well, there — there may or may not be, Your Honor. But here, there is already a very clear rule about subsequent occurrences after removal that — that firm up jurisdiction, and the court can and should consider those. And it's — and — and so unless the court has any further questions. No. Thank you very much. Thank you. Castro v. ABM Industries, submitted for decision. And that completes our argument calendar for this morning.
judges: Fletcher, Berzon, Bea